IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JULIE R. AKIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-4156-CV-C-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in March 1981 and completed high school and some college. She has prior work experience as a pharmacy technician, produce worker, cashier, deli worker, and fast food worker. She applied for benefits under Title II and Title XVI, alleging she became disabled on September 15, 2007, due to a combination of back pain and depression. The arguments raised focus almost exclusively on her back condition, and the Court's opinion will as well.

Plaintiff injured her back in September 2007 while lifting a fifty-pound crate of potatoes at work. R. at 448. An MRI showed herniation, disk protrusion and an annular tear at L5-S1 and bulges at L3-L4 and L4-L5. R. at 289-90. Dr. John Spears at the Missouri Spine Institute examined Plaintiff and noted Plaintiff ambulated and performed other tests with no difficulty, and he diagnosed Plaintiff as suffering from degenerative disk disease at L5-S1 and chronic axial back pain with no evidence of radiculopathy, myelopathy, or "any compression on any neurologic structure in the central canal,

lateral recesses, or exiting foramen." Dr. Spears further concluded Plaintiff suffered from "uncomplicated back pain without a neurologic problem." R. at 285-86. In November 2007, Plaintiff underwent a breast reduction designed to alleviate pressure on, and pain in, her back. R. at 300-01. Thereafter, she reported to the surgeon that she could "already feel a relief in her back pain." R. at 284.

In late March 2008, Plaintiff reported pain in her lower abdomen that radiated to her lower back. On examination, she exhibited tenderness in the lower lumbar area adjacent to her spinal column and a minimal decrease in her range of motion. R. at 316-17. Plaintiff's back pain persisted, and on April 1 she was examined again, with similar findings produced. R. at 312-13. An MRI performed the next day revealed a bulge with moderate to severe narrowing at L5-S1 and slight bulges and narrowing at L3-L4 and L4-L5. R. at 386. It does not appear that any particular treatment was directed at this time, and subsequent visits to her doctor do not mention back problems, although an x-ray taken in July 2008 was normal. R. at 382.

Approximately two weeks *after* this x-ray, Plaintiff slipped on her steps; this resulted in back pain. She was x-rayed again, and again the x-ray was normal. She was diagnosed as suffering from a lumbar strain and prescribed one Vicodin and one Tylenol. R. at 377-78. Another MRI in October 2008 showed mild narrowing at L3-L4 and L4-L5 and a disk bulge with some protrusion and mild narrowing at L5-S1. R. at 372.

In February 2009, Plaintiff saw Dr. George Varghese. His report indicates Plaintiff's prior doctor (Doctor Noble) was not seeing Plaintiff any longer because he did not take her insurance. Dr. Varghese further indicates Plaintiff had previously undergone a series of steroid injections and a medial branch block over the last twelve months. However, in addition to her back pain, Plaintiff stated she was experiencing significant pain in her legs. Dr. Varghese indicated he would "follow through with Dr. Noble's plan and . . . perform a discogram and . . . get her set up for an electromyography." R. at 483-86. The discogram was performed on March 12 and revealed the following:

- At L3-L4: No significant degenerative changes or compression.
- At L4-L5: Minimal degenerative changes and a small annular tear.

2

- At L5-S1: Degenerative changes to the disk and compression of the nerve root. R. at 478-79. Plaintiff returned to Dr. Varghese in April and expressed interest in undergoing surgery, and to that end Plaintiff was referred to Dr. Craig Kuhns. Plaintiff told Dr. Kuhns that 60% of her pain was in her back and 40% was in her legs, and described a myriad of limitations that began worsening in March (although she also stated she had suffered "incapacitating pain" since the incident in September 2007). While Plaintiff's gait was steady and she was able to heel/toe walk, she also exhibited a decreased range of motion. Dr. Kuhns directed Plaintiff to lose some weight and return in four months for a reassessment, explaining that "weight loss would help us with surgery as a well as help her to have a better outcome." R. at 448-53.

Plaintiff returned in August, by which time her body mass index ("BMI") was still "elevated" but had decreased from 42 to 38. Dr. Kuhns scheduled her for spinal fusion at L5-S1. R. at 556-57. The surgery was successfully performed in early September. In a follow-up appointment on October 8 – six weeks after the surgery – Plaintiff reported that the leg pain was gone but she still experienced pain in her back. No restrictions were imposed or suggested, and she was directed to return in four months. R. at 540-41.

During the hearing, Plaintiff testified she tried a series of jobs after her alleged onset date, but all of them involved standing as a regular part of the duties and it was more than she could tolerate. R. at 33-35. She began going school full time at Metro Business College starting in December 2007, but she found attending school full time, working part time, and taking care of her kids too much to attend to. R. at 36-38. She stopped going to school in December 2008 or January 2009. She testified breast reduction surgery helped alleviate her back pain, but the pain returned before she returned to school. R. at 44-45. The back surgery alleviated the pain in her legs but not her back – but she also admitted she had been told the surgery was intended to alleviate pain in her legs and not her back. R. at 45-46. Now, both walking and sitting cause her pain: she cannot sit or walk for more than half an hour at a time or lift more than twenty pounds. She has curtailed her church activities, is unable to perform household chores, and must lie down to relieve pain at least three to four days per week. R. at 48-51.

3

The ALJ found Plaintiff could perform sedentary work with the additional restrictions of being unable to climb a ladder, rope or scaffold, and only occasionally climb ramps or stairs, stoop, kneel, crouch or crawl.  He reached this conclusion after recognizing Plaintiff suffered from a back condition and had back surgery in September 2009, but found her testimony about her limitations was not fully credible.  In reaching this latter finding, the ALJ noted the various medical testing indicating she demonstrated a normal gait and normal strength, statements she made about her ability to care for her three-year old child, the fact that Plaintiff was not receiving regular treatment, and the fact that Plaintiff's ability to attend college during a significant portion of the alleged period of disability contradicted the very limitations she alleged to exist.  R. at 19-21.  The ALJ found Plaintiff was unable to return to her past relevant work but, based on the testimony of a vocational expert, found Plaintiff could perform other work that exists in the national economy.

## I.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## A.

Plaintiff first argues there was not substantial evidence in the Record as a whole because no doctor offered opinions that matched the ALJ's RFC findings. The flaw in this argument is there is no requirement that a doctor offer opinions mirroring the ALJ's RFC findings. The ALJ found Plaintiff's condition was largely unchanged from September 2007 through the date of the hearing, and during that time period Plaintiff spent slightly more than a year attending college as a full-time student. This finding supports his conclusion Plaintiff could perform a wide range of sedentary work. In addition, no doctor opined Plaintiff suffered from greater limitations than those the ALJ found to exist. The absence of a doctor's opinion that a claimant cannot perform sedentary work is lends some support to the conclusion the claimant can perform sedentary work. Moreover, the examining doctors found Plaintiff exhibited normal gait and normal strength. The medical evidence, coupled with Plaintiff's activities, provides substantial evidence to support the ALJ's RFC findings.

## B.

Plaintiff next argues the ALJ failed to account for certain ailments. She first faults the ALJ for failing to consider the diagnosis of obesity. However, obesity is not a functional restriction. The combination of Plaintiff's obesity and back problems combined to result in a single RFC. Plaintiff essentially suggests the ALJ was required to parse out the portions of the RFC that were attributed to her obesity and those portions attributed to her back – but this is not required by law (and probably is not possible in any event).

In a single sentence, Plaintiff also contends "the ALJ failed to include any restrictions as a result of Plaintiff's mental limitations, although the Plaintiff has been hospitalized on several occasions and received mental health treatment" for a variety of issues. Plaintiff's Brief at 15. This lone sentence does not present anything for the Court to review; it is insufficient for a Plaintiff to marshal the evidence in her favor and simply say "this proves there was insufficient evidence to support the ALJ's decision."

More specifically with respect to the present case, Plaintiff has not offered an argument identifying any infirmities in the ALJ's discussion of this issue. R. at 17-19.

### III. CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: September 16, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT